(99 South. 725)

## Ex parte GADSDEN CAR WORKS.

## HAWKINS v. GADSDEN CAR WORKS.

### (7 Div. 368.)

(Supreme Court of Alabama. April 10, 1924.)

**1. Master and servant ⟨⟩412—Weight of evidence in compensation case for trial court.**

In proceeding under Workmen's Compensation Act the weight of the evidence was an issue solely for the trial court.

**2. Master and servant ⟨⟩385(1)—Compensation allowed for concurring permanent partial disabilities.**

In case of two concurring permanent partial disabilities, one from loss of members and the other from injury to the head concurring with an injury to the eyes producing a general loss of earning power, the court should award the compensation having the longest period of disability benefits and more fully compensating for the disability sustained, under Workmen's Compensation Act, § 13.

Certiorari to Circuit Court, Etowah County; O. A. Steele, Judge.

Petition of the Gadsden Car Works for certiorari to the circuit court, Etowah county, to review the judgment of said court in a proceeding under the Workmen's Compensation Act by L. R. Hawkins against the Gadsden Car Works. Writ denied, and judgment affirmed.

Lange & Simpson, of Birmingham, for petitioner.

Counsel argue for error in the judgment, but without citing authorities.

C. W. Peters and W. J. Boykin, both of Gadsden, opposed.

The trial court's findings as to the extent of disability and earning capacity will not be reviewed. Ex parte Sloss Co., 207 Ala. 219, 92 South. 458; Ex parte L. & N. R. Co., 208 Ala. 216, 94 South. 289. The act is to be given a broad application and construction. Ex parte L. & N. R. Co., supra. Where the finding of facts is meager, the bill of exceptions will be looked to, to determine wheth-

---

er there is legal evidence to support the finding. Ex parte Mt. Carmel Coal Co., 209 Ala. 519, 96 South. 627.

BOULDIN, J. This is a petition for certiorari to review the proceedings in the case of L. R. Hawkins v. Gadsden Car Works under the Workmen's Compensation Act.

The complaint charges that while jacking up a freight car the jack slipped from its position, and the jack lever "flew upward with great force, striking plaintiff on the head and face, causing serious personal injuries, and fracturing plaintiff's skull, greatly impairing plaintiff's ability to earn a livelihood." The trial court found that—

"The plaintiff received personal injuries by accident arising out of and in the course of his said employment in the nature of a violent blow on his head, which said injury affected plaintiff's eyes and head and proximately caused to plaintiff the following permanent partial disabilities, to wit, the permanent loss of 25 per cent. of vision in both of plaintiff's eyes and the permanent loss of 50 per cent. of plaintiff's earning capacity at the time of said injury."

It was adjudged that plaintiff was not entitled to recover for the loss of 25 per cent. of vision, but was entitled to compensation for his permanent partial disability "under the Workmen's Compensation Act, § 13, par. (c), p. 214, a sum equal to 50 per cent. for himself and 10 per cent. additional" on account of three wholly dependent children under 18 years of age. In fixing the weekly allowance the court found that since the injury plaintiff had procured employment at different intervals aggregating 36 weeks at average earnings of $16 per week; that his average earnings at the time of the injury were $34.56 per week, and the average amount he is able to earn in his partially disabled condition is $17.28. Compensation was fixed at 60 per cent. of $17.28, or $10.37 per week for 300 weeks.

Petitioner, the employer, insists that on this finding of facts there was error in the amount of the weekly allowance, in this: That the average earnings of $16, deducted from the prior earnings of $34.56 shows $18.56 loss of earnings per week, 60 per cent. of which is $11.14. Clearly the employer suffered no injury from this feature of the award.

But the point is made that the evidence does not support the finding. A bill of exceptions in aid of the finding of facts is made part of the record. It appears that at the time of the trial plaintiff's earnings were $19.25 per week. Thus figured the allowance would be $9.19 per week. But the evidence further showed varying wages during the 36 weeks, running from $8 per week to the maximum at the time of the trial. The court was not without evidence to warrant his finding that plaintiff's average earning capacity was reduced by the injury 50 per cent. or $17.28.

[1] Much evidence, pro and con, is called to our attention touching the extent of plaintiff's injury. The appellant's evidence tended to show no permanent injury to the head, and that the injury to the eyes was only an astigmatism which had been corrected by the use of glasses. Appellee's evidence tended to show a depression of the skull, the recurrence of violent headaches, mental lapses, loss of weight, and such impairment of strength as to make it necessary to take lighter work at reduced wages. The weight of this evidence, as we have often held, was an issue solely for the trial court. Ex parte Sloss-Sheffield S. & I. Co. (Greek's Case) 207 Ala. 219, 92 South. 458; Ex parte L. & N. R. R. Co., 208 Ala. 216, 94 South. 289; Ex parte Woodward Iron Co. (Dowell's Case) ante, p. 74, 99 South. 97.

[2] Another question presented is this: In case of two concurring permanent partial disabilities, one from loss of members, and the other from injury to the body, what compensation is allowed under the statute?

The trial court allowed compensation of $10.37 per week for 300 weeks under the general disability clause of section 13, subd. (c), Acts 1919, p. 214, which reads:

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty per centum of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition, subject to a maximum of twelve ($12.00) per week as otherwise provided herein. Compensation shall continue during disability, not, however, beyond three hundred (300) weeks."

It is suggested in argument that the compensation should have been allowed under the special schedule for loss of members— in this case the partial loss of both eyes. Subdivision (c), p. 213, subdivision (d), p. 214, and subdivision (e), p. 215. Thus figured, the period of disability benefits would be shorter, and the compensation less in amount than awarded. "For permanent partial disability the compensation shall be based upon the extent of such disability." Subdivision (c), p. 212, opening paragraph. The special schedule of benefits or compensation for loss of members applies to "cases included" therein. A case of injury to the head, concurring with an injury to the eyes, producing a general loss of earning power for which a greater compensation is allowable than for the injury to the eyes alone, cannot be said to be "included" in the special schedule for loss of members only. Applying the "concurrent injury" clause of subdivision (c) to the case in hand, the court was correct in awarding the compensation having the longest period of disability benefits and more

fully compensating for the disability sustained. Broderick Co. v. District Court, 144 Minn. 198, 174 N. W. 826; State ex rel. Kennedy v. District Court, 129 Minn. 91, 151 N. W. 530; Ex parte Puritan Baking Co., 208 Ala. 373, 94 South. 347. Whether the "concurrent injury" clause applies to all cases of permanent partial disabilities is not now before us. Ex parte Diniaco & Bros., 207 Ala. 685, 93 South. 388.

Writ denied, and judgment affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.